IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA
2019 FEB -4 AM 11: 59
OFFICE OF THE CLERK

UNITED STATES OF AMERICA,

Plaintiff,

vs.

LISA KWAPNIOWSKI,

Defendant.

8:18CR360

PLEA AGREEMENT

IT IS HEREBY AGREED between the plaintiff, United States of America, through its counsel, Joseph P. Kelly, United States Attorney and Donald J. Kleine, Assistant United States Attorney, and defendant, Lisa Kwapniowski, and Jim McGough, counsel for defendant, as follows:

## I
## THE PLEA

A. *CHARGE(S) & FORFEITURE ALLEGATION(S).*

Defendant agrees to waive Indictment and plead guilty to an Information. Count I charges wire fraud, a violation of Title 18, United States Code, Section 1343.

In exchange for the defendant's plea of guilty as indicated above, the United States agrees that the defendant will not be federally prosecuted in the District of Nebraska for other known violations of federal law relating to the offense conduct set forth Section II(B) of this Plea Agreement, other than as set forth above.

## II
## NATURE OF THE OFFENSE

A. ELEMENTS EXPLAINED.

Defendant understands that the offense to which defendant is pleading guilty has the following elements:

1. That defendant devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises.

2. That defendant acted with the intent to defraud.

1

3. That in advancing, furthering, or carrying out the scheme, defendant transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.

B. ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS.

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime, and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed.

In approximately March 2000, defendant was hired by Children's Hospital and Medical Center ("Children's Hospital"), located in the District of Nebraska, as a pharmacy team lead. By 2003, defendant was promoted to Director of Pharmacy Services. Defendant's job duties included overseeing the management and overall operation of Children's Hospital's pharmacy department. Defendant was assisted by two pharmacy managers and a purchasing technician in carrying out the day-to-day functions of Children's Hospital's pharmacy services.

In early 2012, defendant set up a business called RxSynergy. Soon after setting up RxSynergy, defendant knowingly began to submit fraudulent invoices from RxSynergy to Children's Hospital for payment. The invoices purported to be for pharmaceuticals and supplies, however, neither RxSynergy nor defendant ever provided any goods to Children's Hospital in relation to the invoices. A number of the RxSynergy invoices were for a drug called Broxcilam, which was not a real drug.

As part of the scheme, defendant opened a mailbox at Postal Zone, as well as a bank account at Financial Institution 1, in the name of RxSynergy. Defendant also obtained a tax ID number for RxSynergy. Defendant created fraudulent RxSynergy invoices on her computer at home, located in the District of Nebraska. Prior to mid-2016, defendant would carry the hard copy invoices to Children's Hospital, sign them as pharmacy director, indicating her approval for the expense, and route the invoices to the finance department in an inter-office envelope for payment. Defendant would eventually receive a check made payable to RxSynergy through the mail, at the mailbox she rented at the Postal Zone.

In mid-2016, Children's Hospital began processing its invoices through Financial Institution 2, which was located in the State of Missouri. The process for submitting and approving invoices became primarily electronic. Defendant would still create RxSynergy

invoices at her home, carry them to Children's Hospital, scan them, and electronically submit the invoices to Financial Institution 2 from the State of Nebraska to the State of Missouri. Soon thereafter, defendant would receive an electronic notification from Financial Institution 2 that an RxSynergy invoice was pending and needed her approval. Defendant would sign-in to Children's Hospital's computer system and approve the invoice electronically. Approved invoices were processed by Financial Institution 2 and a check was mailed to RxSynergy. Defendant, through RxSynergy, fraudulently invoiced Children's Hospital approximately 227 times between 2012 and 2018.

Between January 2012 and November 2013 defendant also submitted fraudulent invoices to Children's Hospital that appeared to come from PharMedium, a legitimate pharmaceutical vendor. Defendant created fraudulent invoices directed to Children's Hospital that appeared to come from PharMedium. Using a Paypal vendor's account defendant had created using the name Advantage RX, defendant would utilize Paypal's website to make a payment to the Advantage RX Paypal account, using a Children's Hospital corporate credit card. Defendant would submit to Children's Hospital the fraudulent PharMedium invoices along with an internal approval form, which would act as the justification for Children's Hospital to pay the outstanding corporate credit card bill. Children's Hospital would pay the credit card company directly. Defendant then transferred funds from the fraudulent Advantage RX Paypal account to her personal bank account.

Between February 2012 and March 2013 defendant also submitted a number of fraudulent Amazon.com shipping/order confirmations to Children's Hospital for reimbursement. Defendant ordered personal items from Amazon and created confirmations, which appeared to be for pharmacy supplies. Defendant submitted the fraudulent Amazon confirmations to Children's Hospital as justification for the corporate credit card charges to be paid.

In 2008 and 2010, defendant also submitted fraudulent invoices from other seemingly legitimate pharmaceutical suppliers. Defendant submitted reimbursement requests utilizing invoices she created. Children's Hospital reimbursed defendant for the fraudulently submitted invoices.

During the course of defendant's scheme to defraud Children's Hospital, defendant sent, or caused to be sent, numerous wires, in the form of electronically submitted invoices to Financial Institution 2, in interstate commerce using a computer and the internet. The

electronically submitted invoices defendant sent, or caused to be sent, were used to advance, further, and carrying out the scheme to defraud Children's Hospital. Electronically submitted invoices sent, or caused to be sent, by defendant include, but are not limited to, the following:

| RxSynergy Invoice Date | RxSynergy Invoice Number | RxSynergy Invoice Amount | RxSynergy "Product" | On or about date Invoice electronically submitted to Financial Institution 2 |
|---|---|---|---|---|
| 11/19/2016 | 162112579 | $26,223 | Broxcilam | 11/19/2016 |
| 7/24/2017 | 17728566 | $23,471 | Broxcilam | 7/24/2017 |
| 5/4/2018 | 510183674 | $20,719 | Broxcilam | 5/4/2018 |

Proceeds obtained during the course of defendant's scheme to defraud Children's Hospital were used by defendant for personal expenses, including the purchase of personal property, vehicles and real property located at xxxxx, Elkhorn, Nebraska. The total amount of funds obtained by defendant as a result of her scheme to defraud is $4,622,234.

### III

### PENALTIES

A.  COUNT I. Defendant understands that the crime to which defendant is pleading guilty carries the following penalties:

1. A maximum 20 years in prison;
2. A maximum $250,000 fine;
3. A mandatory special assessment of $100 per count; and
4. A term of supervised release of not more than 3 years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison all or part of the term of supervised release.
5. Possible ineligibility for certain Federal benefits.

4

## IV
## AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE
## DISTRICT OF NEBRASKA

This plea agreement is limited to the United States Attorney's Office for the District of Nebraska, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities.

## V
## SENTENCING ISSUES

A.  SENTENCING AGREEMENTS.

Although the parties understand that the Guidelines are advisory and only one of the factors the court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments and Departures (if applicable). Unless otherwise stated, all agreements as to sentencing issues are made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1.  **Base Offense Level** - The parties agree that the defendant's base offense level under U.S.S.G. § 2B1.1 is 7.

2.  **Specific Offense Characteristics – Loss** - The parties agree that for United States Sentencing Guideline purposes the offense caused a loss of more than $3,500,000 but less than $9,500,000, with a Guideline increase of 18 levels under U.S.S.G. § 2B1.1(b).

3.  **Other Enhancement** – The parties have no agreement regarding applicability of other guideline enhancements.

4.  **Acceptance of Responsibility** – If the defendant is found to be entitled to an offense level reduction under U.S.S.G. 3E1.1(a) for acceptance of responsibility, the United States hereby moves that the court reduce the defendant's offense level by one additional level, pursuant to U.S.S.G. § 3E1.1(b), if that paragraph otherwise applies.

5.  **Restitution** - Defendant acknowledges restitution will be ordered as a part of the sentence in this case in the amount of $4,622,234, minus payments made by defendant. As such, it is understood that restitution paid by defendant will be

5

paid to Children's Hospital. Defendant understands that at sentencing, the Court will order that restitution is "due and payable immediately."

The defendant understands that a schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on methods, available to the United States to enforce the judgment. If incarcerated, the defendant agrees to participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless whether the Court specifically directs participation or imposes a payment schedule. Pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due immediately and subject to immediate enforcement by the United States as provided for in 18 U.S.C. § 3613. Defendant agrees to provide all of defendant's financial information to the United States and the Probation Officer, and agrees, if requested, to participate in a debtor exam.

6. **Stipulation regarding sale of certain property** – The Defendant and K.K. own property located at xxxxx, Elkhorn, Nebraska (the "Residence"). Defendant has listed the Residence for sale prior to sentencing with a qualified real estate professional for market value to be sold in an arms-length transaction to a non-insider or non-family member. Defendant, and K.K. through a separate stipulation, agree to request that the Title Company handling sale of the Residence instruct the buyers, upon the date of closing of the Residence, to make a check payable to the "United States District Court Clerk's Office," in the full amount of proceeds remaining after existing liens and legitimate expenses incurred as a result of selling the Residence are satisfied. Defendant, and K.K. through a separate stipulation, also agree to request that Title Company handling sale of the Residence instruct the buyers to include in the Memo line defendant's name, Lisa Kwapnioski, and the case number for this criminal action.

***In the event the Residence is not sold before sentencing, defendant understands that, pursuant to 18 U.S.C. § 3613(c), a lien upon defendant's residence will automatically arise upon sentencing and that the United States will subsequently perfect the lien by filing a notice of the same.

B.  ACCEPTANCE OF RESPONSIBILITY.

Notwithstanding paragraph A above, the United States will not recommend any adjustment for Acceptance of Responsibility if defendant:

1. Fails to admit a complete factual basis for the guilty plea at the time it is entered, or
2. Denies involvement in the offense, gives conflicting statements about that involvement, or is untruthful with the court or probation officer, or
3. Fails to appear in court, or
4. Engages in additional criminal conduct, or
5. Attempts to withdraw the guilty plea, or
6. Refuses to abide by any lawful court order, or
7. Contests or assists any third party in contesting the forfeiture of property(ies)seized or forfeited in connection with this case.

C.  ADJUSTMENTS, DEPARTURES & REDUCTIONS UNDER 18 U.S.C. § 3553.

The parties agree that defendant may request or recommend additional downward adjustments, departures, including criminal history departures under U.S.S.G. § 4A1.3, and sentence reductions under 18 U.S.C. § 3553(a), and that the United States will oppose any such downward adjustments, departures, and sentence reductions not set forth in Section V, paragraph A above.

D.  CRIMINAL HISTORY.

The parties have no agreement concerning the defendant's Criminal History Category.

E.  "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION.

The parties agree that the facts in the "factual basis" paragraph of this agreement, if any, are true, and may be considered as "relevant conduct" under U.S.S.G. § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

The parties agree that all information known by the office of United States Pretrial Service may be used by the Probation Office in submitting its presentence report, and may be disclosed to the court for purposes of sentencing.

F.  RECOMMENDATION REGARDING CUSTODY.

The United States will recommend that defendant be sentenced to the low end of the advisory guideline range as calculated by the United States pursuant to this agreement.

The United States will not object to defendant remaining on pretrial release pending sentencing as long as she remains in compliance with the terms and conditions of her pretrial release.

In the event this Court sentences defendant to a term of imprisonment, the United States will not object to defendant self-reporting to the designated Bureau of Prison facility as long as she remains in compliance with the terms and conditions of her pretrial release.

## VI

## DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

The defendant hereby knowingly and expressly waives any and all rights to appeal the defendant's conviction and sentence, including any restitution order in this case, and including a waiver of all motions, defenses, and objections which the defendant could assert to the charges or to the Court's entry of Judgment against the defendant, and including review pursuant to 18 U.S.C. § 3742 of any sentence imposed, except:

(a) As provided in Section I above, (if this is a conditional guilty plea); and

(b) A claim of ineffective assistance of counsel.

The defendant further knowingly and expressly waives any and all rights to contest the defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255, except:

(a) The right to timely challenge the defendant's conviction and the sentence of the Court should the Eighth Circuit Court of Appeals or the United States Supreme Court later find that the charge to which the defendant is agreeing to plead guilty fails to state a crime.

(b) The right to seek post-conviction relief based on ineffective assistance of counsel.

If defendant breaches this plea agreement, at any time, in any way, including, but not limited to, appealing or collaterally attacking the conviction or sentence, the United States may prosecute defendant for any counts, including those with mandatory minimum sentences, dismissed or not charged pursuant to this plea agreement. Additionally, the United States may use any factual admissions made by defendant pursuant to this plea agreement in any such prosecution.

8

# VII
## **BREACH OF AGREEMENT**

Should it be concluded by the United States that the defendant has committed a crime subsequent to signing the plea agreement, or otherwise violated this plea agreement, the defendant shall then be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted. Any such prosecution(s) may be premised upon any information, statement, or testimony provided by the defendant.

In the event the defendant commits a crime or otherwise violates any term or condition of this plea agreement, the defendant shall not, because of such violation of this agreement, be allowed to withdraw the defendant's plea of guilty, and the United States will be relieved of any obligation it otherwise has under this agreement, and may withdraw any motions for dismissal of charges or for sentence relief it had already filed.

# VIII
## **SCOPE OF AGREEMENT**

A. This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral.

B. By signing this agreement, the defendant agrees that the time between the date the defendant signs this agreement and the date of the guilty plea will be excluded under the Speedy Trial Act. The defendant stipulates that such period of delay is necessary in order for the defendant to have opportunity to enter the anticipated plea of guilty, and that the ends of justice served by such period of delay outweigh the best interest of the defendant and the public in a speedy trial.

C. The United States may use against the defendant any disclosure(s) the defendant has made pursuant to this agreement in any civil proceeding. Nothing contained in this agreement shall in any manner limit the defendant's civil liability which may otherwise be found to exist, or in any manner limit or prevent the United States from pursuing any applicable civil remedy, including but not limited to remedies regarding asset forfeiture and/or taxation.

D. Pursuant to 18 U.S.C. § 3013, the defendant will pay to the Clerk of the District Court the mandatory special assessment of $100 for each felony count to which the defendant pleads guilty. The defendant will make this payment at or before the time of sentencing.

9

E. By signing this agreement, the defendant waives the right to withdraw the defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d). The defendant may only withdraw the guilty plea in the event the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5). Furthermore, defendant understands that if the court rejects the plea agreement, whether or not defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and defendant shall be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

F. This agreement may be withdrawn by the United States at any time prior to its being signed by all parties.

## IX

## MODIFICATION OF AGREEMENT MUST BE IN WRITING

No promises, agreements or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties.

## X

## DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, defendant certifies that defendant read it. Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

UNITED STATES OF AMERICA
JOSEPH P. KELLY
United States Attorney

2/4/19
Date

DONALD J. KLEINE
ASSISTANT U.S. ATTORNEY

12/14/18
Date

LISA KWAPNIOWSKI
DEFENDANT

12/14/18
Date

JIM MCGOUGH
COUNSEL FOR DEFENDANT

10